## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  07-cr-00519-REB
Criminal Case No. 09-cr-00479-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. SALVATORE CARMINE ANDRETTI,
      a.k.a. Sal Andretti

      Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS
## RELEVANT TO SENTENCING

The United States of America, by and through Judith A. Smith, Assistant United States Attorney, and defendant, SALVATORE CARMINE ANDRETTI, personally and through counsel, Sean McDermott, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing.

## I. PLEA AGREEMENT

This plea is pursuant to Fed. R. Crim. P. 11(c)(1)(C).  The Defendant agrees to plead guilty to counts One, Two, Three and Eight of the Second Superseding Indictment in Case Number 07-cr-519-REB.  Additionally, the defendant agrees to consent to a Rule 20 transfer in U.S. v. Andretti, a case from the Northern District of Georgia, and to tender pleas of guilty to the counts One, Two and Three of that Indictment, case number

1

Court's Exhibit

1

09-cr-00479-REB.   Counts One through Three of the Second Superseding Indictment in case number 07-cr-00519-REB charge violations of 18 U.S.C. § 2113(a) and (d) and (2), Armed Bank Robbery and Aiding and Abetting the same.   Count Eight charges a violation of 18 U.S.C. §§ 922(g)(1) and 924(e), Possession of a Firearm by an Armed Career Criminal.   Counts One and Three of the Indictment in case number 09-cr-00479-REB also charge violations of 18 U.S.C. § 2113(a) and (d) Armed Bank Robbery. Count Two of that Indictment charges a violation of 18 U.S.C. § 924(c), Use and Carry a Firearm During a Crime of Violence.

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties enter into this binding plea and agree that the defendant should receive a sentence of 300 months (25 years) for all of the crimes of conviction if the Court accepts this plea agreement.   However, if the Court does not accept this binding plea, the defendant and/or the government may withdraw from the plea agreement pursuant to Rule 11(c)(1)(C).

The defendant agrees to pay restitution as determined by the court for all counts of conviction and agrees to forfeiture and abandonment of property as outlined below. In exchange, the government agrees to dismiss the remaining charges in both indictments.   It also agrees not to bring charges now known by the government against Victoria Arrick.   Further, if the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3 point reduction in the offense level for acceptance of responsibility is appropriate and agrees to make the appropriate motion at sentencing.

## A. **FORFEITURE**

### 1. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to: $5370.00 in U.S. Currency recovered from the Fairfield Inn in Westminster, Colorado, on April 9, 2007; $279.00 in U.S. Currency recovered from the Fairfield Inn in Westminster, Colorado, on April 9, 2007; $1075 in U.S. Currency recovered from the Fairfield Inn in Westminster, Colorado, on April 9, 2007; $7,055 in U.S. Currency recovered from the Days Inn in Canton, Georgia on July 21, 2007. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is

pleading guilty and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing.  These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.  To that end, defendant agrees fully to assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located.  The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee.

The defendant agrees that the United States is not limited to forfeiture of the property described above.  If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above.  This Court shall retain jurisdiction to settle any disputes arising from application of this clause.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be

4

deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

### 2. Abandonment of Property - Firearms and Ammunition

The United States of America and the defendant hereby agree that any firearm and/or ammunition as defined in 18 U.S.C. § 921, seized from the defendant and currently in the custody and/or control of the Bureau of Alcohol, Tobacco and Firearms and/or the Federal Bureau of Investigation, or local law enforcement agencies, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 924(d) and/or that the firearms and ammunition constitute evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title and interest the defendant has in the firearms and ammunition to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Bureau of Alcohol, Tobacco and Firearms, or other appropriate agency, to cause the firearms and/or ammunition described above to be destroyed forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the plea agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the owner of the previously referenced eight nine-millimeter bullets recovered from the Fairfield Inn in Westminster, Colorado, on April 9, 2007; a Smith and Wesson nine-millimeter handgun, bearing serial number

BDJ1563, recovered from the Fairfield Inn in Westminster, Colorado, on April 9, 2007; a Star nine-millimeter handgun, bearing serial number 1974571, recovered from the Days Inn in Canton, Georgia on July 21, 2007; and twenty-one nine-millimeter bullets recovered from the Days Inn in Canton, Georgia on July 21, 2007, and that the defendant hereby voluntarily abandons all right and claim to these ammunition and weapons.

## II. STATUTORY PENALTIES

The statutory penalty for a violation of 18 U.S.C. § 2113(a, (d) and 2 is: not more than 25 years imprisonment, not more than a $250,000 fine, or both; not more than 5 years supervised release; $100 special assessment fee. The parties believe that the defendant is an Armed Career Criminal under 18 U.S.C. §§ 922(g) and 924(e). Therefore, the statutory penalty for a violation of 18 U.S.C. §§ 922(g) and 924(e) is: not less than fifteen years imprisonment, not more than a $250,000 fine, or both; not more than five years supervised release; $100 special assessment fee. Because the firearm was brandished, the statutory penalty for a violation of 18 U.S.C. § 924(c) is: not less than seven years, not more than life, not more than a $250,000 fine, or both; not less than five years supervised release; $100 special assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## III. ESSENTIAL ELEMENTS

The essential elements of the crime of Armed Bank Robbery, in violation of 18 U.S.C.

§2113(a) and (d) are:

1.      The defendant intentionally took money from the person and presence of another;

2.      The money belonged to or was in the possession of a federally insured bank at the time of the taking;

3.      The defendant took the money by means of force and violence and intimidation.

4.      The defendant assaulted some person or put some person's life in jeopardy by the use of a dangerous weapon or device, while taking the money.

The essential elements of the crime of Possession of a Firearm by an Armed Career Criminal, in violation of 18 U.S.C. § 922(g)(1) and 924(e) are:

1.      The defendant was previously convicted of a felony, that is, a crime punishable by a term of imprisonment exceeding one year;

2.      The defendant knowingly possessed a firearm after the felony conviction;

3.      Before the defendant possessed the firearm, the firearm had at some time moved from one state to another, or from one country to another.

The defendant understands that the sentencing enhancement found in 18 U.S.C. § 924(e) will be determined by the court at the time of sentencing; however, the defendant understands and acknowledges that his criminal history renders this sentencing enhancement applicable to him because he has three previous convictions that are "violent felonies" each committed on occasions different from one another as

7

defined in 18 U.S.C. §§ 924(e)(1) and 924(e)(2)(B).

The essential elements for aiding and abetting, in violation of 18 U.S.C. § 2 are:

    1.      That someone else committed a crime; and

    2.      That the defendant intentionally associated himself in some way with that

crime and intentionally participated in it as he would in something he wished

to bring about by aiding, abetting, counseling, commanding, inducing, or

procuring its commission.

The essential elements for using or carrying a firearm during a crime of violence, in

violation of 18 U.S.C. § 942(c) are:

    1.      The defendant committed Armed Bank Robbery, in violation of 18 U.S.C.

§ 2113(a) and (d).  Armed Bank Robbery is a crime of violence;

    2.      During and in relation to committing the crime of Armed Bank Robbery,

the defendant used or carried a firearm.

The defendant understands that the mandatory minimum sentence of seven years

found in 18 U.S.C. § 924(c)(1)(A) for brandishing a firearm will apply to him.

## IV. <u>STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING</u>

The parties agree that there is no dispute as to the material elements which

establish a factual basis of the offense of conviction.  Pertinent facts are set out below in

order to provide a factual basis of the plea and to provide facts which the parties believe

are relevant, pursuant to § 1B1.3, for computing the appropriate guideline range.  To the

extent the parties disagree about the facts relevant to sentencing, the statement of facts

identifies which facts are known to be in dispute at the time of the plea.  § 6B1.4(b).

8

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§ 1B1.3) or to sentencing in general (U.S.S.G. § 1B1.4; 18 U.S.C. § 3553(a)).  In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." §6B1.4 Comm.

The parties stipulate to the following facts:

The defendant, Mr. Salvatore Carmine Andretti, and Mr. Charles Curtis[1], were incarcerated together at the Federal Correction Institute in Englewood, Colorado from approximately May, 2006 until March 23, 2007.  On March 23, 2007, Charles Curtis was released from custody.  Approximately seven days later, on March 30, 2007, the defendant was released from custody.  On that same day, at about 10:20 a.m., the two men entered the Liberty Savings Bank at 234 Columbine Street, Denver, Colorado.  Charles Curtis was holding a gun, a 9mm grey semi-automatic pistol, and pointed it at a teller.  He also pointed the gun at other employees and customers, and ordered everyone to lie on the floor.  While Mr. Curtis pointed the gun at the people in the bank, the defendant climbed over the teller counter and ordered the first teller and another teller to lie face down on the floor.  Mr. Andretti then removed cash and two dye packs from the top and bottom drawers of two teller stations and climbed back over the counter.

As both men fled from the bank, Ms. Morris heard Mr. Curtis tell everyone to stay

---

[1] Mr. Curtis was indicted separately and pleaded guilty to two counts of armed bank robbery.

on the floor or he would, "bust a cap in your ass."  The two men fled with $6,099.00 that was in the possession and care of Liberty Savings Bank.  At the time of the robbery, Liberty Savings Bank was insured by Federal Deposit Insurance Corporation, an agency of the United States Government.

Two witnesses in the bank's parking lot reported that they were alerted to the two fleeing men because they saw a large amount of red smoke emanating from the clothing of Mr. Andretti.  They saw the two men get into a red Chevrolet Blazer.  During subsequent investigation, witnesses at the scene identified Mr. Curtis and Mr. Andretti as the two men who robbed the bank.

On April 3, 2007 the same two men entered the Arapahoe Credit Union at 1610 East Girard Avenue, Englewood, Colorado.  A teller in the Credit Union, Rebecca Lee, reported that Mr. Curtis pointed a silver handgun at her and others in the bank and he ordered them to sit down.  Mr. Andretti went behind the teller line and removed money from two teller stations.  The two men then fled from the bank.  The two men fled with $19,467.00 in cash that was in the possession and care of the Arapahoe Credit Union.  At the time of the robbery, Arapahoe Credit Union was insured by National Credit Union Association Board, an agency of the United States Government.  During subsequent investigation, witnesses positively identified Mr. Curtis and Mr. Andretti as the two men who robbed the bank.

On April 9, 2007 Westminster police responded to the Fairfield Inn.  At that hotel, the officers discovered Mr. Curtis in a room adjoining the room of a woman identified as Victoria Arrick and a man who claimed to be Tommy Davis.  Mr. Davis was, in fact, the

defendant. Officers asked to see the defendant's I.D., but he claimed his I.D. was out in the parking lot. The officers allowed the defendant to leave, and he fled the scene. The officers later saw photos from the Arapahoe Credit Union. They identified the defendant, the man who had called himself Tommy Davis, as one of the robbers. After obtaining written consent to search Ms. Arrick's hotel room, officers found a grey Lady Smith 9 millimeter semi-automatic handgun, $5,370 from the pocket of large black bag on the bed, and $276 in a wallet that was in the same bag. They also found a picture of the defendant and the defendant's social security card. The gun was capable of expelling a projectile by the action of an explosive. It was not made in Colorado; therefore, it must have travelled in interstate commerce before arriving in defendant's possession in Colorado. Defendant admits that sometime between March 30, 2007 and April 9, 2007 he possessed the Lady Smith 9 millimeter semi-automatic handgun.

On May 16, 2007, the defendant walked into the Pikes Peak National Bank in Fountain Colorado. He approached an employee and inquired about opening an account. The employee handed the defendant two brochures and a business card. The defendant then pulled out a handgun, pointed it at the people in the bank and told the people in the bank to get down on the floor. The defendant then walked behind the teller counter where he dropped the brochures and business card that he had been holding. He pointed the gun at the tellers and told them to get down on the floor. He then emptied the teller drawers and took $2080.00 of the bank's money. At the time of the robbery, Pikes Peak National Bank was insured by Federal Deposit Insurance Corporation, an agency of the United States Government. The business card that the

defendant dropped behind the teller counter was tested for fingerprints.  Fingerprints were found on the card, and a comparison showed that the prints found on the card matched the defendant's known fingerprints.

On June 25, 2007, at approximately 10:00 a.m., witnesses saw the defendant pull up to the RBC Centura Bank in Alpharetta Georgia in a green over tan Ford Explorer.  He entered the bank.  He walked into the bank and told the teller he had been in before and inquired about opening an account.  He pointed toward one of the employees indicating that she had helped him before.  That person came out from behind her desk and approached the defendant.  As she was doing this, the defendant took a dark-colored semi-automatic firearm from his waistband, grabbed the employee by the arm, and pointed the firearm it at her.  He said to the teller, "give me all of your money."  He also ordered the other employees to lie on the floor or else he would "pop a cap" in them, and threatened to take the employee as a hostage.  The teller handed over approximately $4100 in cash.  The defendant left the bank and got into the Ford Explorer.  Video surveillance of the robbery was recovered.  Stills from that video also show that the robber is the defendant.  At the time of the robbery, RBC Centura Bank was insured by Federal Deposit Insurance Corporation, an agency of the United States Government.  The defendant "brandished" the firearm during the robbery as defined in 18 U.S.C. § 924(c)(4).  The gun that the defendant brandished during this robbery was a "firearm" as defined in 18 U.S.C. § 921(a)(3).

On July 16, 2007, at approximately 10:00 a.m., the defendant walked into the Gwinnett Community Bank in Suwanee, Georgia, and pulled a black handgun from his

waistband.  The robber pointed the gun at the tellers and demanded money.  He also stated "don't give me the dye pack."  The teller handed over the money, and the defendant asked if a dye pack was inside.  The defendant then ordered the teller to lie on the floor.  He then fled out the door.  As he was leaving, he threatened those in the bank not to look at him or he would put a "cap in their ass."  At the time of the robbery, Gwinnett Community Bank was insured by Federal Deposit Insurance Corporation, an agency of the United States Government

On July 21, 2007, law enforcement found and arrested the defendant at the Days Inn in Canton, Georgia.  During a search of the defendant's hotel room, officers found a Star BM 9 millimeter handgun, a pellet gun, two bandannas, a stocking-type head cover, and a silver lock box containing approximately $7,000 in cash.

A witness to the Liberty Savings Bank robbery identified the Star handgun recovered in Georgia as the same gun the defendant used during that robbery.

At the time these offenses were committed, the defendant acknowledges and agrees that he had previously been convicted of at least three violent felonies, each a crime punishable by a term of imprisonment exceeding one year, and each committed on occasions different from one another as defined in 18 U.S.C. § 924(e).

## IV. <u>SENTENCING COMPUTATION</u>

The parties stipulate that sentencing in this case will be determined by application of the advisory sentencing guidelines, issued pursuant to Title 28, United States Code, Section 994(1), and Title 18, United States Code, Section 3553.  The

parties acknowledge that the sentencing guidelines are advisory and one of the factors the Court must consider in imposing sentence. The defendant agrees and consents that facts that determine the offense level will be found by the Court, by a preponderance of the evidence, and that the Court may consider and use any reliable evidence, including hearsay and the facts outlined in the Presentence Report. The parties further agree that the stipulation of facts in this plea agreement will also be used by the Court in determining the sentencing guideline range.

The parties provide the following estimated guideline range for the Court's consideration pursuant to 18 U.S.C. § 3553(a)(4); the range provided is an estimate only, and neither party is bound by the estimated calculation.

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any advisory guideline range computed, and that the Court is not bound by any position of the parties. § 6B1.4(d). The Court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. § 6B1.4 Comm.; § 1B1.4.

To the extent the parties disagree about the estimated guideline sentencing factors, the computations below identify the factors which are in dispute. § 6B1.4(b).

### COUNT ONE  Case number 07-cr-00519-REB

**Offense Level**:  The base guideline is § 2B3.1.

A. The base offense level for this offense is 20.  § 2B3.1(a)

B. Because the property of a financial institution was taken, the offense level is increased **+2.**  § 2B3.1(b)(1)

14

C. Because the defendant otherwise used a firearm, the offense level is increased **+6**. § 2B3.1(b)(2).

D. Because a person was physically restrained to facilitate commission of the offense, the offense level is increased **+2**. § 2B3.1(b)(4).

E. The offense level for Count One is **30**.

### COUNT TWO Case number 07-cr-00519-REB

**Offense Level**:  The base guideline is § 2B3.1.

F. The base offense level for this offense is 20.  § 2B3.1(a)

G. Because the property of a financial institution was taken, the offense level is increased **+2**.  § 2B3.1(b)(1)

H. Because the defendant otherwise used a firearm, the offense level is increased **+6**. § 2B3.1(b)(2).

I. Because a person was physically restrained to facilitate commission of the offense, the offense level is increased **+2**.  § 2B3.1(b)(4).

J. Because the loss was more than $10,000, the offense level is increased **+1**. § 2B3.1(b)(7).

K. The offense level for Count Two is **31**.

L. No victim-related, role-in-offense, obstruction adjustments apply.

### COUNT THREE Case number 07-cr-00519-REB

M. The base offense level for this offense is 20.  § 2B3.1(a)

N. Because the property of a financial institution was taken, the offense level is increased **+2**.  § 2B3.1(b)(1)

O. Because the defendant otherwise used a firearm, the offense level is increased **+6**. § 2B3.1(b)(2).

P. Because a person was physically restrained to facilitate commission of the offense, the offense level is increased **+2**.  § 2B3.1(b)(4).

Q. The offense level for Count Three is **30**.

**COUNT ONE Case number 09-cr-00479-REB**

R. The base offense level for this offense is 20.  § 2B3.1(a)

S. Because the property of a financial institution was taken, the offense level is increased **+2.**  § 2B3.1(b)(1)

T. Because a person was physically restrained to facilitate commission of the offense, the offense level is increased **+2.**  § 2B3.1(b)(4).

U. The offense level for Count Three is **24.**

**COUNT THREE Case number 09-cr-00479-REB**

V. The base offense level for this offense is 20.  § 2B3.1(a)

W. Because the property of a financial institution was taken, the offense level is increased **+2.**  § 2B3.1(b)(1)

X. Because the defendant otherwise used a firearm, the offense level is increased **+6.**  § 2B3.1(b)(2).

Y. Because a person was physically restrained to facilitate commission of the offense, the offense level is increased **+2.**  § 2B3.1(b)(4).

Z. The offense level for Count Three is **30.**

**Multiple Counts**

AA.      Because these counts do not group, each separate count is a unit; therefore, the highest offense level should be increased **+4.**  § 3D1.4, § 3D1.5

BB.      Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility.  § 3E1.1(a).  Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government.  § 3E1.1(b).  At sentencing, the government will make the appropriate motion for the one-point reduction.

CC.      The adjusted offense level is **32.**

**COUNT EIGHT Case number 07-cr-00519-REB**

DD.      The defendant is an Armed Career Criminal; therefore, the applicable guideline is § 4B1.4.

EE.      If the Court determines defendant is an Armed Career Criminal pursuant

to 18 U.S.C. § 924(e), because the defendant used or possessed the firearm in connection with a crime of violence, namely Armed Bank Robbery, as defined in § 4B1.2(a), the base offense level for this offense is **34**. § 4B1.4(b)(3)(B)

### Career Offender—Armed Robbery Counts

FF. The parties believe that the defendant is a Career Offender. Therefore, the offense level for all of the Armed Robbery counts is **35**, and the Criminal History Category is **VI**. § 4B1.1(c)(2)(A).

### Adjusted Offense Level for Acceptance of Responsibility

GG.      Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

HH.      The adjusted offense level is **32**.

### Guideline Ranges

II. The guideline range resulting from the estimated offense level of 32 and the criminal history category of VI is **210** to **262** months. The statutory minimum sentence for a violation of 18 U.S.C. §§ 922(g)(1) and 924(e) is 15 years, or **180** months. Added to the guideline range is the statutory mandatory minimum of **84** months for the 18 U.S.C. § 924(c) conviction pursuant to defendant's status as a Career Offender. § 4B1.1(2)(A). Therefore, the recommended guideline range for all of these offenses is **294 – 346**.

JJ. Pursuant to § 5E1.2, assuming the offense level of 31, the fine range for this offense would be $17,000 to $175,000, plus applicable interest and penalties.

KK.      Pursuant to § 5D1.2, if the Court imposes the term of supervised release, that term shall be at least 3 years but not more than 5 years.

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the advisory sentencing range resulting from the proposed plea agreement is appropriately calculated because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent guidelines sentencing factors

with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements, side agreements, terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: _Nov 6th_

SALVATORE CARMINE ANDRETTI
Defendant

Date: _11/6/2009_

Sean McDermott
Attorney for Defendant

Date: _11/6/09_

Judith A. Smith
Assistant U.S. Attorney